GARCIA RAINEY BLANK & BOWERBANK LLP
   A Limited Liability Partnership
JEFFREY M. BLANK, Cal. Bar No. 217522
   jblank@garciarainey.com
NORMA V. GARCIA, Cal. Bar No. 223512
   ngarciaguillen@garciarainey.com
695 Town Center Drive, Suite 700
Costa Mesa, California 92626-1993
Telephone:  714.382.7000
Facsimile:   714.784.0031

Attorneys for Plaintiff
SPORTS RESEARCH CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPORTS RESEARCH CORPORATION, a California Corporation,<br><br>                    Plaintiff,<br><br>           v.<br><br>SOCIAL CADRE, LLC, a New Jersey Limited Liability Company; THE PERFECT SCULPT, LLC, a New Jersey Limited Liability Company; FITCHOICE CORPORATION, a New Jersey Corporation; DANIEL SNOW, an individual; JONATHAN SNOW, an individual; GREGORY HUELPLER, an individual; MICHAEL RODRIGUEZ, an individual; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**(1)  TRADEMARK INFRINGEMENT (Section 32 of Lanham Act, 15 U.S.C. § 1114);**<br>**(2)  TRADE DRESS INFRINGMENT (Section 43(a) of Lanham Act, 15 U.S.C. § 1125(a));**<br>**(3)  REVERSE CONFUSION (Section 43(a) of Lanham Act, 15 U.S.C. § 1125(a);**<br>**(4)  UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND PASSING OFF (Section 43(a) of Lanham Act, 15 U.S.C. § 1125(a);**<br>**(5)  TRADEMARK DILUTION (Section 43(c) of Lanham Act, 15 U.S.C. § 1125(c));**<br>**(6)  TRADEMARK DILUTION (Cal. Bus. & Prof. Code § 14247);**<br>**(7)  UNFAIR COMPETITION (Cal. Bus. & Prof. Code §§ 17200 *et seq.*);**<br>**(8)  CIVIL CONSPIRACY;**<br>**(9)  ACCOUNTING**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Sports Research Corporation ("Plaintiff" or "SRC") alleges the following causes of action against defendants SOCIAL CADRE, LLC ("Social Cadre"), THE PERFECT SCULPT, LLC ("Perfect Sculpt"), FITCHOICE CORPORATION ("FitChoice," and collectively with Social Cadre and Perfect Sculpt, "the Snow Entities"), DANIEL SNOW ("Daniel"), JONATHAN SNOW ("Jonathan," and together with Daniel, "the Snow Brothers"), GREGORY HUELPLER ("Huelpler"), MICHAEL RODRIGUEZ ("Rodriguez"), and DOES 1 through 100 ("DOE Defendants") (collectively, "Defendants") as follows:

## SUMMARY OF ACTION

1.      This is an action for permanent injunctive relief and to recover damages for Defendants' willful and malicious acts of federal trademark infringement; federal trade dress infringement; federal reverse confusion; federal unfair competition, false designation of origin, and passing off; federal trademark dilution; California trademark dilution; California unfair competition; civil conspiracy; and accounting.

2.      These claims arise out of the sale of competing workout enhancer products across the United States and in the Central District of California.

## THE PARTIES

### PLAINTIFF

3.      Plaintiff SRC is a corporation duly incorporated under the laws of the state of California in 1981, with its principal place of business at 784 W. Channel Street, San Pedro, California 90731 ("SRC Address").  SRC is a worldwide manufacturer and distributer of fitness and nutritional products, including the SWEET SWEAT® workout enhancer gel ("SWEET SWEAT® Product").  The SWEET SWEAT® Product and related products are sold online through SRC's website as well as on amazon.com and other health-related retailers throughout the United States, including in the Central District of California.

## **NAMED DEFENDANTS**

4.     SRC is informed and believes, and based thereon alleges, that defendant Social Cadre is a New Jersey limited liability company.  Its principal place of business is listed on socialcadre.com as 201 NJ 17, Suite 606, Rutherford, New Jersey 07070. However, SRC is informed and believes, and based thereon alleges, that there is no such business at that address.

5.     SRC is informed and believes, and based thereon alleges, that defendant Perfect Sculpt is a New Jersey limited liability company.  Its principal place of business is listed on perfectsculpts.com as 201 NJ 17, Suite 606, Rutherford, New Jersey 07070.  However, SRC is informed and believes, and based thereon alleges, that there is no such business at that address.

6.     SRC is informed and believes, and based thereon alleges, that defendant FitChoice is a New Jersey corporation.  Its principal place of business is listed on fitchoice.co as 201 NJ 17, Suite 606, Rutherford, New Jersey 07070.  However, SRC is informed and believes, and based thereon alleges, that no such business exists at that address.

7.     SRC is informed and believes, and based thereon alleges, that the defendant Snow Brothers (Daniel and Jonathan) are individuals residing in Edgewater, New Jersey and doing business across the United States, including in the Central District of California.

8.     SRC is informed and believes, and based thereon alleges, that the Snow Brothers are the co-founders of Social Cadre and either directly or indirectly operate FitChoice and Perfect Sculpt.

9.     SRC is informed and believes, and based thereon alleges, that defendant Huelpler is an individual employed by Social Cadre in New Jersey.  The Snow Websites each represent that "Questions about the Terms of Service should be sent to us at greg@socialcadre.com."

10.     SRC is informed and believes, and based thereon alleges, that defendant Rodriguez is an individual employed as Manager of FitChoice and Perfect Sculpt.

11.     SRC is informed and believes, and based thereon alleges, that Defendants are using the trademark SCULPT SWEAT on a "workout enhancer" cream (the "Sculpt Sweat Product(s)"), which they sell both individually and in conjunction with sweat vests and belts on their websites perfectsculpts.com, theperfectsculpt.com (which now redirects to perfectsculpts.com), fitchoice.co, and shopsculptsweat.com (collectively, "the Snow Websites") throughout the United States, including in the Central District of California.

12.     SRC is informed and believes, and based thereon alleges, that Defendants do not own any federal or state registrations or trademark applications.

13.     SRC is informed and believes, and based thereon alleges, that Defendants utilize a fulfillment center in Valencia, California to complete orders of the Sculpt Sweat Product.

**ALTER EGOS**

14.     SRC is informed and believes, and based thereon alleges, that the Snow Entities are shell companies being used as instrumentalities and conduits for a single venture controlled by the Snow Brothers.

15.     SRC is informed and believes, and based thereon alleges, that Snow Entities are the alter egos of the Snow Brothers, by reason of the following:

a.     SRC is informed and believes, and based thereon alleges, that there exists a unity of interest and ownership between the Snow Brothers, on the one hand, and the Snow Entities, on the other hand, such that any individuality and separateness between the Snow Brothers, on the one hand, and the Snow Entities, on the other hand, does not exist.

b.     SRC is informed and believes, and based thereon alleges, that the Snow Brothers exercise complete control and dominance over the Snow Entities and

consequently, the Snow Entities are mere shells, instrumentalities, and conduits through which the Snow Brothers carry on a single enterprise.

c.      SRC is informed and believes, and based thereon alleges, that the Snow Brothers, at all times relevant hereto, dominated, influenced, and controlled the Snow Entities, and any officers or directors other than the Snow Brothers that such entities may have, as well as the business, property, and affairs of such entities.

d.      SRC is informed and believes, and based thereon alleges, that at all times relevant hereto, the Snow Entities were created and continued pursuant to a fraudulent plan, scheme, and device conceived and operated by the Snow Brothers, whereby the income, revenue, and profits of such entities were diverted by the Snow Brothers to themselves.

e.      SRC is informed and believes, and based thereon alleges, that at all times relevant hereto, the Snow Entities were organized by the Snow Brothers as a device to avoid individual liability and to create tax advantages and that such entities were formed with capitalization totally inadequate for the business in which said company was engaged.

16.      By virtue of the foregoing, adherence to the fiction of the separate corporate existence of the Snow Entities would, under the circumstances, sanction a fraud and promote injustice in that SRC may be unable to obtain effective relief and collect upon any judgment in its favor.  SRC is informed and believes, and based thereon alleges, that at all times relevant hereto, the Snow Brothers and the Snow Entities acted for each other in connection with the conduct herein alleged that each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of each other.

**DOE DEFENDANTS**

17.      SRC is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 100, inclusive, or

any of them, and is gathering information to determine if other known entities or individuals are complicit in Defendants' wrongdoing, and therefore sues these defendants, and each of them, by such fictitious names.  SRC will either file a DOE amendment and/or an amended complaint and/or seek leave of this Court to amend this complaint when the status and identities of these defendants are ascertained or when SRC determines claims against known entities or individuals are warranted. The DOES include individuals and entities assisting or acting in concert with Defendants in connection with the acts complained of herein.

18.    Each fictitiously named defendants was in some way responsible for, participated in, or contributed to the matters of which SRC complains, and has legal responsibilities for those matters.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction under Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121, under Sections 1311, 1338, and 1367 of the Judicial Code, 28 U.S.C. §§ 1331, 1338, 1367, and under principals of pendant jurisdiction.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 as there is diversity between the parties and the matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000).

20.    This Court has personal jurisdiction over the Defendants because Defendants transact business in California and this action arises from this transacting of business, namely, the sale and marketing of the Sculpt Sweat Products in California.  Defendants' Sculpt Sweat Product is available for purchase in the State of California and Defendants fulfill their orders of the Sculpt Sweat Product in this judicial district, and therefore, Defendants have engaged in tortious conduct in the State of California and this district.

21.    Venue is proper in this district pursuant to 28 U.S.C. § 1391.

1

### SRC'S SWEET SWEAT® TRADEMARKS AND PRODUCT

2       22.    SRC is a global leader in the manufacture, distribution, and sale of

3   workout-related products worldwide since 1980.

4       23.    Among other things, SRC owns a federal trademark for SWEET

5   SWEAT® (U.S. Registration No. 4,826,800), the trademark under which it sells the

6   SWEET SWEAT® Product and waist trimmer belts.  Attached hereto as **Exhibit A** is

7   a true and correct copy of this SWEET SWEAT® trademark registration in the United

8   States, which is incorporated herein by reference.

9       24.    SRC also sells thigh and arm trimmer belts, fitness clothing and

10   accessories, and provides online retail store services featuring health, fitness, and

11   weight loss products under a separate SWEET SWEAT® federal trademark (U.S.

12   Registration No. 5,335,523).  Attached hereto as **Exhibit B** is a true and correct copy

13   of this SWEET SWEAT® trademark registration in the United States, which is

14   incorporated herein by reference.

15       25.    SRC also owns a federal trademark for the "Sweat Drop Logo" (U.S.

16   Registration No. 5,311,331), which it uses in connection with the SWEET SWEAT®

17   Product.  Attached hereto as **Exhibit C** is a true and correct copy of Sweat Drop Logo

18   trademark registration in the United States, which is incorporated herein by reference.

19       26.    SRC began selling the SWEET SWEAT® Product at least as early as

20   October 2, 1987.  SRC began using the Sweat Drop Logo in connection with the

21   SWEET SWEAT® Product as early as August 2013.

22       27.    SRC advertises its SWEET SWEAT® Product as a "workout enhancer"

23   that is "activated by your elevated heartrate and may help the body sweat more during

24   exercise."  SRC represents that for optimal results, the SWEET SWEAT® Product

25   should be used in conjunction with SWEET SWEAT® waist trimmer belt.

26                     **SRC'S SWEET SWEAT TRADE DRESS**

27       28.    SRC is the owner of inherently distinctive trade dress embodied by the

28   unique and distinctive packaging of its SWEET SWEAT® Product ("Sweet Sweat

Trade Dress").  This packaging dress is comprised of various nonfunctional elements that create a distinctive appearance.

29.    In particular, SRC has used the following packaging design elements for its SWEET SWEAT® Product to create a distinctive commercial impression, *e.g.*, black container with the SWEET SWEAT® mark and the Sweat Drop Logo prominently featured on the packaging, the text "workout enhancer" on the front of the packaging, the SRC Address and SRC's phone number ("SRC Phone Number," and together with SRC Address, "SRC Contact Information") prominently on the back of the product packaging, and the Universal Product Code ("UPC") for the specific product.

30.    SRC sells the SWEET SWEAT® Product in 6.5 oz and 13.5 oz jars, a 6.4 oz stick that may be applied directly to the body, and in travel packets.

31.    The following images, Figures 1 and 2, are the front and back of the SWEET SWEAT® Product 6.5 oz jar, respectively.



**Figure 1**

1
2
3
4
5
6
7
8
9
10
11
12
13



**Figure 2**

14      32.    The UPC for the SWEET SWEAT® Product 6.5 oz jar is 23249000013

15  ("SWEET SWEAT® UPC") and is unique to this specific product.

16      33.    The following images, Figures 3 and 4, are the front and back of the 6.4

17  oz SWEET SWEAT® Product stick, respectively:

18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Figure 3**

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



**Figure 4**

19    34.    The Sweet Sweat Trade Dress, in part or as a whole, is used to convey

20  the distinct appearance of the SWEET SWEAT® Product as compared to other

21  workout enhancers on the market and is nonfunctional.  The choice of packaging

22  colors is nonfunctional.  There is no functional need for the SRC Contact Information

23  and SWEET SWEAT® UPC, as the products would work perfectly without the text or

24  image.

25    35.    None of these package design elements serve any function other than to

26  distinguish SRC's workout enhancer products from others on the market.  Of the

27  many workout enhancer products that compete directly with SRC's workout enhancer

28

products, other than as alleged in this Complaint, none use the combination of design elements that constitute the Sweet Sweat Trade Dress.

36.     SRC has continuously promoted, advertised, marketed, sold, and distributed the SWEET SWEAT® Product using the Sweet Sweat Trade Dress since as early as early as August 2013.

37.     SRC's SWEET SWEAT® Product is sold at a wide range of retail venues throughout the United States.  The SWEET SWEAT® Product has been sold at major mass merchant retailers such as WalMart and such major health and fitness retailers as GNC, The Vitamin Shoppe, and Academy Sports + Outdoors.  The SWEET SWEAT® Product is also sold online at sportsresearch.com, amazon.com, and others, including but not limited to the websites for those retailers listed above.

38.     The SWEET SWEAT® Product packaged in the Sweet Sweat Trade Dress has been marketed extensively by SRC as well as its retailers through retail point-of-purchase displays, in-store and in-person promotional activities, sales representative marketing activities, online marketing activities, and catalogs.  During this time frame, SRC has made significant expenditures on the sales and marketing of the SWEET SWEAT® Product.

39.     Based on the foregoing extensive, frequent, and ongoing marketing, sales, and distribution by SRC of the SWEET SWEAT® Product with the Sweet Sweat Trade Dress, the Sweet Sweat Trade Dress has acquired distinctiveness and secondary meaning as an indicator of the unmatched quality of SRC's SWEET SWEAT® Product.

40.     The Sweet Sweat Trade Dress, consistent across the SRC workout enhancer product line, indicates that such products emanate from a single source, SRC.

41.     Since the time SRC first created and began using the Sweet Sweat Trade Dress, SRC has been, and currently is, the exclusive source in the United States for workout enhancer products having the Sweet Sweat Trade Dress.

42.     The SRC workout enhancer products having the Sweet Sweat Trade Dress have been one of the top-selling workout enhancer products nationwide.

43.     SRC has expended substantial effort and funds in developing the goodwill in the Sweet Sweat Trade Dress and in developing consumer association with the Sweet Sweat Trade Dress as emanating from SRC.  As a result of the sales and marketing efforts of SRC described above, the public has come to look for workout enhancer products bearing the Sweet Sweat Trade Dress from SRC.

44.     The distinctive packaging of SRC's workout enhancer products has become so associated with the SWEET SWEAT® brand that it communicates the same features as the SWEET SWEAT® brand name itself.

45.     Portions of the current Sweet Sweat Trade Dress have been used continuously on the SWEET SWEAT® Product since its introduction in 1987.

## DEFENDANTS' IMPROPER CONDUCT

46.     Defendants have unfairly encroached into SRC's market for workout enhancers by using a confusingly similar mark, Sculpt Sweat, in combination with trade dress that is confusingly similar to, and an obvious derivative of, the Sweet Sweat Trade Dress, including the display of SRC Contact Information and SWEET SWEAT® UPC.  Defendants' careful mimicking of SRC's overall commercial impression is likely to cause confusion, mistake, or deception for consumers seeking to purchase SRC products, including the SWEET SWEAT® Product.

47.     Indeed, instances of actual confusion have already been reported to SRC.

48.     Beginning in or about June 2019, SRC discovered the existence of the Sculpt Sweat Product and the Snow Websites based on emails to its customer support specialists ("SRC Customer Support") and calls received on the SRC Telephone Number from customers who had purchased the Sculpt Sweat Product on the Snow Websites and believed the products purchased were SRC products.

49.   Various individuals contacted SRC in order to make complaints about the Sculpt Sweat Product.  Numerous individuals called the SRC Telephone Number and spoke with and subsequently emailed with SRC Customer Support.  One individual stated that he called the phone number displayed on the Sculpt Sweat Product he ordered, which was the SRC Telephone Number, and was directed to the SRC Customer Support website.  Another individual contacted SRC Customer Support directly via email and forwarded a shipping confirmation email from FitChoice, stated that she had not received everything she ordered, and asked SRC to fulfill the order or otherwise refund her account.  Attached hereto as **Exhibit D** is a true and correct copy of various emails between SRC Customer Support and individuals purchasing the Sculpt Sweat Product, and is incorporated herein by this reference.

50.   In response to each complaint, SRC Customer Support asked the individuals for pictures of the product they received and the contact information on the product label.  (*See* Exhibit D.)

51.   The individuals each responded with email confirmations or product pictures showing that the products were not SRC products, including the SWEET SWEAT® Product, but rather the Sculpt Sweat Product and were fulfilled by the Snow Companies.  (*See id.*)

52.   In addition, the Snow Websites were prominently displaying images of the Sculpt Sweat Product including its packaging and tube ("Infringing Image"), which contained specific representations including SRC Contact Information, SRC's toll-free phone number, and the SWEET SWEAT® UPC, as shown in Figure 5 below:

**Figure 5**

53.    SRC also discovered that the Snow Websites were utilizing SRC's copyright thermogenic images and advertising copy on the shopsculptsweat.com website.

## CONTINUED WRONGDOING AND USE OF SRC INFORMATION BY DEFENDANTS DESPITE CEASE AND DESIST DEMAND

54.    On or about September 17, 2019, SRC issued a cease and desist letter to Defendants in which it demanded an accounting of profits derived from the use of the

Sculpt Sweat mark and sales of the Sculpt Sweat Products received to date from each Snow Website and any other source of sales.  Attached hereto as **Exhibit E** is a true and correct copy of SRC's September 17, 2019 cease and desist letter issued to Defendants, and incorporated herein by this reference.

55.    SRC also demanded that Defendants, and each of them, (i) cease and desist from infringing on SRC's copyrighted materials in any way on any of the Snow Defendants' products, packaging or advertising, in print, electronic or otherwise; (ii) cease and desist from infringing on SRC's trade dress in any way on the Snow Defendants' websites, products, packaging or advertising, in print, electronic or otherwise; (iii) remove all references to the infringing advertising copy from the Snow Websites; (iv) remove all SRC copyrighted images from the Snow Defendants' websites, packaging and products; (v) cease from using any SRC trade dress and copyrighted images on any online, printed or any other materials in any form; and(vi) provide written confirmation that the Snow Defendants will abide by SRC's cease and desist demand.  (*See* Exhibit E.)

### First Instance of Continued Wrongdoing Despite Representations By Defendants' Counsel

56.    On or about September 30, 2019, Defendants' counsel for the Snow Defendants responded, stating that it was "shocking" that the Sculpt Sweat Product packaging contained the SWEET SWEAT® UPC and SRC Contact Information and that Defendants "did not have a hand in adding those particular materials to the label." Instead, Defendants' counsel represented that Defendants' manufacturer provided the SWEET SWEAT® UPC and added it to Defendants' product packaging "under the impression that it was unique to our product[]" and added the SRC Contact Information "without [Defendants'] knowledge or their direction."  Attached as **Exhibit F** is a true and correct copy of Defendants' response to SRC's cease and desist letter dated September 30, 2019 ("September 30 Letter"), incorporated herein by this reference.

57.     Defendants' counsel further represented as follows:

> "As soon as you notified our client of this issue, the manufacturer was contacted and directed to remedy the situation **immediately**. To the best of our knowledge, all newly manufactured product will feature the correct UPC and business address of Social Cadre and any content belonging to your client has been removed. According to our client's manufacturer, on or near the date of this letter, all new product sold and shipped to customers should have the updated labeling. Social Cadre will follow up with the manufacturer and review new product in order to ensure that this oversight has been corrected."

(Exhibit F, emphasis in original.)

58.     Defendants' counsel also represented that the presence of SRC's copyrighted thermal images and advertising copy on Snow Websites was "a surprise to our clients, who had no hand in actually developing the website and had trusted a professional marketing company to produce this advertising content with original content and imagery."  (*See id.*)

59.     Defendants' counsel further represented that as of the date of his letter, the images have been removed from the shopsculptsweat.com website.  (*See id.*)

60.     On or about October 1, 2019, SRC ordered various products, from Perfect Sculpt, including the Sculpt Sweat Product and a Sculpt Sweat Men's Sweat Belt.

61.     When the products arrived, the packaging and tube for the Sculpt Sweat Products was identical to the Infringing Image.  Specifically, it displayed SRC Contact Information and the SWEET SWEAT® UPC.

62.     In addition, the SCULPT SWEAT packaging and tube contained representations ("Sculpt Sweat Representations") different from those on SRC's website regarding SWEET SWEAT®, and such representations do not comply with the law.

**Repeated Instance of Continued Wrongdoing Despite Representations By Defendants' Counsel**

63.     On October 5, 2019, SRC's counsel requested the name of the manufacturer referenced by Defendants' counsel in his September 30 Letter.

64.     On October 21, 2019, Defendants' counsel responded that the manufacturer has shut down and no longer exists.  Defendants' counsel represented that the reference to a marketing company was a miscommunication between himself and Defendants, and that the Infringing Image was put together by an internal marketer who no longer works for Social Cadre.  Defendants' counsel further represented that since Social Cadre had removed the Infringing Image, including SRC Contact Information and the SWEET SWEAT® UPC, from all packaging and websites, the matter was resolved.  Defendants' counsel concluded by committing to (i) no further use of the Infringing Image, SRC Contact Information, and the SWEET SWEAT® UPC; and (ii) the destruction of all Sculpt Sweat Product packaging containing the Infringing Image and/or SRC Contact Information and/or the SWEET SWEAT® UPC.

65.     On October 22, 2019, the following day, SRC was able to view new images of the SCULPT SWEAT product on the Snow Websites, but the Infringing Image was still viewable in numerous online advertisements and SRC's business address, the SRC Telephone Number, and the SWEET SWEAT® UPC could still be identified.

66.     As of at least October 22, 2019, Defendants had removed SRC's copyrighted thermogenic images and related advertising copy from the shopsculptsweat.com website.

67.     In addition, SRC continued to purchase products from the Snow Websites.  SRC received its latest orders of two SCULPT SWEAT creams.  The packaging and tube of each still displayed SRC Contact Information and the SWEET® UPC, as shown in Figures 6-10 below:



**Figure 6**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Figure 7**

COMPLAINT

**Figure 8**

1
2
3
4
5
6
7
8
9
10
11
12
13



**Figure 9**

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Figure 10**

**Figure 11**

68.     In addition, as can be seen in Figure 11, above, the packaging and tube display continued to display the Sculpt Sweat Representations, including that it:

      a.     "Enhances circulation of sweating;"

      b.     "Targets fat loss and undesirable water weight removal;"

      c.     "Combats muscle fatigue while enhancing muscle activity;"

d.     "Delivers therapeutic effect to ailing muscles;"

e.     "Increases motivation and energy during physical activity;" and

f.     "Stimulates sweat glands, thus releasing built up toxins from your body."

69.     Therefore, SRC is informed and believes, and based thereon alleges, that Defendants had and continue to have no intention to (i) stop advertising and selling the Sculpt Sweat Product; (ii) stop displaying SRC's information, including SRC's business address, the SRC Telephone Number, and SWEET SWEAT® UPC on the Sculpt Sweat Product; (iii) remove the Sculpt Sweat Representations from the Sculpt Sweat Product; or (iv) destroy any of the Sculpt Sweat Product.

## DEFENDANTS ARE INTENTIONALLY MIMICKING SRC'S TRADEMARK AND TRADE DRESS TO CONFUSE CONSUMERS AND TAKE AWAY SALES

70.     The combination of Defendants' confusingly similar brand name, Sculpt Sweat, and confusingly similar packaging, which includes SRC's Contact information and the SWEET SWEAT® UPC, is not only likely to result in consumer confusion but is already causing confusion and is continuing to do so.  This conduct is believed to have been undertaken intentionally or with reckless disregard to SRC's rights and has demonstrably damaged the goodwill and consumer loyalty in the SWEET SWEAT® brand.

71.     In the alternative, the infringing packaging may cause, and indeed has caused, consumers to believe that the SWEET SWEAT® Product is somehow the same as or affiliated with the manufacturer of the Sculpt Sweat Product.

72.     The similarity between Defendants' Sculpt Sweat mark and the SWEET SWEAT® brand name has already resulted in consumer confusion.  Both brands share the same second word, Sweat, and overall evoke a similar commercial impression.

73.    Defendants have willfully and intentionally mimicked the Sweet Sweat Trade Dress and have caused and are likely to cause consumer confusion as a result.

74.    Further, Defendants' infringing packaging immediately evokes the SWEET SWEAT® brand and the Sweet Sweat Trade Dress and will cause, and already has caused, consumer confusion, mistake, or deception as to whether the Sculpt Sweat Product is the same as the SWEET SWEAT® Product, or new products from the same manufacturer, or have some sort of other affiliation and/or connection with SRC and/or the SWEET SWEAT® brand.

75.    Alternatively, reverse-confusion is also likely to occur when a consumer decides against buying the SWEET SWEAT® brand based on a bad experience with a Sculpt Sweat Product.

76.    The combination of the infringing packaging and the similarity of Defendants' mark to SWEET SWEAT® is likely to create the misapprehension that the issues that consumers found with the Sculpt Sweat Product are attributable to SRC.

77.    In the alternative, the combination of the infringing packaging and the similarity of Defendants' mark to SWEET SWEAT® is likely to create the misapprehension that SRC's workout enhancer products are manufactured by Defendants and are thus of inferior quality, as well.

78.    SRC is informed and believes, and based thereon alleges, that Defendants' infringement of the Sweet Sweat Trade Dress and its marketing, distribution, offering for sale and sale of its Sculpt Sweat Product in the infringing packaging has generated substantial sales and profits for Defendants and has driven SRC's existing and potential customers to purchase products from Defendants, at SRC's expense.

79.    The actual and, upon information and belief, intended effect of Defendants' use of the Sweet Sweat Trade Dress is to cause consumers to be confused or deceived or to mistakenly believe that Defendants' Sculpt Sweat Products sold in

the infringing packaging are made, sponsored, endorsed, authorized by, or in some other manner affiliated with SRC, which they are not. This is especially damaging with respect to those persons who perceive a defect and/or lack of quality in Defendants' Sculpt Sweat Product sold in the infringing packaging. The likelihood of confusion, mistake, and deception created by Defendants' use of the infringing packaging is thus causing irreparable harm to the goodwill symbolized by the Sweet Sweat Trade Dress and the SWEET SWEAT® brand name and the reputation for quality that they embody.

80. As a direct and proximate result of Defendants' infringing activities, SRC is suffering irreparable injury for which there is no adequate remedy at law, including but not limited to the dilution of its brand equity in the eyes of retailers and consumers. Furthermore, absent injunctive relief, SRC will continue to suffer irreparable injury for which there is no adequate remedy at law.

81. SRC is informed and believes, and based thereon alleges, that Defendants have derived certain direct and indirect benefits and profits from their unlawful distribution, marketing, and sale of products in the infringing packaging, all at SRC's economic and reputational expense.

82. The foregoing actions by Defendants have caused and will continue to cause SRC to suffer damages, including but not limited to lost sales, lost profits, and damaged goodwill.

83. SRC is informed and believes, and based thereon alleges, that the foregoing acts by Defendants have been willful, wanton, intentional, malicious, and purposeful or in reckless disregard of, or with callous indifference to, SRC's rights.

84. Defendants' foregoing acts have occurred in interstate commerce and in a manner affecting interstate commerce.

85. The activities of Defendants complained of herein have damaged SRC in an amount that is not yet determined.

86.     Accordingly, SRC seeks damages arising out of Defendants' past and present infringement and permanent injunctive relief against Defendants' continuing use of its infringing trademark, trade dress, and unauthorized use of SRC Contact Information and the SWEET SWEAT® UPC.

## **CONSPIRACY**

87.     The Defendant Snow Brothers, Snow Entities, and DOES 1 through 100 formed a plan to engage in a conspiracy to commit wrongful conduct, and all agreed to the shared common plan and were each aware that each other planned to participate in the plan and that the plan was unlawful and fraudulent.  SRC alleges that to the extent that the Snow Entities and the Snow Brothers are found to be alter egos of each other, then they acted together as one conspiring unit with Huelpler and Rodriguez; as an alternative theory of liability in the event that Snow Entities are not found to be alter egos of the Snow Brothers, then Plaintiff alleges that such non-alter ego Snow Entities—Social Cadre, Perfect Sculpt, and FitChoice—and each of them, was a separate co-conspirator.

88.     Defendant Huelpler aided and abetted the commission of wrongful conduct alleged in this Complaint by the Snow Brothers, the Snow Entities, and DOES 1 through 100.  Huelpler knew that the conduct of the Snow Brothers, the Snow Entities, and DOES 1 through 100 constitutes wrongful conduct and provided substantial assistance and encouragement to the Snow Brothers, the Snow Entities, and DOES 1 through 100 to so act.  Further, the Snow Brothers, the Snow Entities, and DOES 1 through 100 aided and abetted the wrongful conduct alleged in this Complaint by Huelpler.  The Snow Brothers, Snow Entities, and DOES 1 through 100 knew that the conduct of Huelpler constitutes wrongful conduct and provided substantial assistance or encouragement to Huelpler to so act.

89.     Defendant Rodriguez aided and abetted the commission of wrongful conduct alleged in this Complaint by the Snow Brothers, the Snow Entities, and

DOES 1 through 100.  Rodriguez knew that the conduct of the Snow Brothers, the Snow Entities, and DOES 1 through 100 constitutes wrongful conduct and provided substantial assistance and encouragement to the Snow Brothers, the Snow Entities, and DOES 1 through 100 to so act.  Further, the Snow Brothers, the Snow Entities, and DOES 1 through 100 aided and abetted the wrongful conduct alleged in this Complaint by Rodriguez.  The Snow Brothers, Snow Entities, and DOES 1 through 100 knew that the conduct of Rodriguez constitutes wrongful conduct and provided substantial assistance or encouragement to Rodriguez to so act.

90.     SRC is informed and believes, and based thereon alleges, that DOES 1 through 100 were part of the planned conspiracy to commit wrongful conduct, and all agreed to the common plan and were each aware that each other and Defendants planned to participate in the plan and that the plan was unlawful and fraudulent.

91.     SRC is informed and believes, and based thereon alleges, that DOES 1 through 100 aided and abetted the commission of wrongful conduct alleged in this Complaint by Defendants.  DOES 1 through 100 knew that the conduct of Defendants constitutes wrongful conduct and provided substantial assistance and encouragement to Defendants to so act.

## FIRST CAUSE OF ACTION

### (For Trademark Infringement Under Section 32 Lanham Act, 15 U.S.C. § 1114 Against All Defendants and DOES 1-100)

92.     SRC incorporates by reference and realleges the allegations set forth in paragraph 1 through 91 above as if fully set forth herein.

93.     SRC is the exclusive owner of the SWEET SWEAT® and Sweat Drop Logo registered trademarks for use with its workout enhancer topical gel, which are protectable at law under the Lanham Act.

94.     Defendants' use of "Sculpt Sweat" is likely to cause confusion, deception, and mistake by creating the false and misleading impression that

Defendants' products offered in conjunction with this mark are affiliated, connected, or associated with the SWEET SWEAT® workout enhancer products, or are endorsed, sponsored, or approved by, or otherwise originate from, SRC, as the manufacturer of SWEET SWEAT® brand products.

95.     SRC is informed and believes, and based thereon alleges, that Defendants' activities described above have been willful, wanton, and in deliberate disregard of SRC's trademark rights, and for the purpose of intentionally misappropriating and capitalizing on SRC's goodwill.

96.     Defendants' aforementioned acts are exceptional within the meaning of 15 U.S.C. § 1117.

97.     As a direct and proximate result of Defendants' acts of willful infringement, SRC has suffered damage to the SWEET SWEAT® trademark, and other damages in an amount to be proven at trial, including Defendants' profits and SRC's lost profits.

98.     SRC has no adequate remedy at law.  If Defendants' activities are not enjoined, SRC will continue to suffer irreparable harm and injury to its goodwill and reputation.

## SECOND CAUSE OF ACTION

### (For Trade Dress Infringement Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) Against All Defendants and DOES 1-100)

99.      SRC incorporates by reference and realleges the allegations set forth in paragraph 1 through 98 above as if fully set forth herein.

100.   SRC is the exclusive owner of the Sweet Sweat Trade Dress, which is protectable at law under the Lanham Act.  The Sweet Sweat Trade Dress is distinctive and nonfunctional and has become associated with high quality workout enhancers from a single source.  The Sweet Sweat Trade Dress has acquired secondary meaning by virtue of SRC's advertising and marketing and widespread distribution of the SWEET SWEAT® Product packaged in the Sweet Sweat Trade Dress at brick-and-

mortar and online retailers nationwide, and the extensive commercial sales of the SWEET SWEAT® Product packaged in the Sweet Sweat Trade Dress.

101.   Defendants are infringing on the Sweet Sweat Trade Dress in connection with the distribution, marketing, and sale of Defendants' Sculpt Sweat Product in infringing packaging in interstate commerce and in a manner substantially affecting commerce.

102.   Defendants' actions (a) have caused and are likely to continue to cause confusion or mistake or to deceive the relevant consuming public; (b) have caused and are likely to continue to cause consumers to mistakenly believe that SRC has manufactured, sponsored, authorized, or licensed Defendants' products for sale, and/or that Defendants' products are being distributed by an authorized distributor; (c) have caused and are, at a minimum, likely to continue to cause consumers' attention to be initially drawn to the Sculpt Sweat Product due to its' infringing appearance that mimics the appearance of SRC's competing SWEET SWEAT® Product; and (d) have damaged and are likely to continue to damage the reputation and goodwill previously established by SRC in the SWEET SWEAT® brand, Product, and Sweet Sweat Trade Dress.

103.   As a direct and proximate result of the above-mentioned acts, SRC has been deprived of the patronage of a large number of its actual and potential customers, all to its damage in an amount to be determined at trial.

104.   Defendants' foregoing acts constitute infringement of the Sweet Sweat Trade Dress in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

105.   Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

106.   SRC is informed and believes, and based thereon alleges, that Defendants' activities as described above have been willful, wanton, and in deliberate disregard of SRC's trade dress rights, and for the purpose of intentionally misappropriating and capitalizing on SRC's goodwill.

107. Defendants' aforementioned acts are exceptional within the meaning of 15 U.S.C. § 1117.

108. As a direct and proximate result of Defendants' acts of willful trade dress infringement, SRC has suffered damage to the SWEET SWEAT® trademark, and other damages in an amount to be proven at trial, including Defendants' profits and SRC's lost profits.

109. SRC has no adequate remedy at law.  If Defendants' activities are not enjoined SRC will continue to suffer irreparable harm and injury to its goodwill and reputation.

**THIRD CAUSE OF ACTION**

**(For Reverse Confusion Under Section 43(a) of Lanham Act, 15 U.S.C. § 1125(a) Against All Defendants and DOES 1-100)**

110. SRC incorporates by reference and realleges the allegations set forth in paragraph 1 through 109 above as if fully set forth herein.

111. SRC is informed and believes, and based thereon alleges, that Defendants have expended considerable resources in promoting workout enhancers bearing the Sculpt Sweat name and the infringing packaging.

112. Defendants are infringing the Sweet Sweat Trade Dress and SWEET SWEAT® trademarks in connection with the distribution, marketing, and sale of Defendants' Sculpt Sweat Product in infringing packaging in interstate commerce and in a manner substantially affecting commerce.

113. Defendants' actions (a) are likely to cause confusion among consumers as to the source of the SWEET SWEAT® Product; (b) are likely to cause consumers to believe that Defendants have manufactured, sponsored, authorized, or licensed the SWEET SWEAT® Product for sale; and (c) are likely to damage the reputation and goodwill previously established by SRC in the SWET SWEAT® brand, Product, and Sweet Sweat Trade Dress.

114.   Defendants' foregoing actions constitute reverse confusion under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

115.   SRC is informed and believes, and based thereon alleges, that Defendants' activities described above have been willful, wanton, and in deliberate disregard of SRC's trademark rights, and for the purpose of intentionally misappropriating and capitalizing on SRC's goodwill.

116.   Defendants' aforementioned acts are exceptional within the meaning of 15 U.S.C. § 1117.

117.   As a direct and proximate result of Defendants' acts of willful trademark and trade dress infringement, SRC has suffered damage to the SWEET SWEAT® trademark, and other damages in an amount to be proven at trial, including Defendants' profits and SRC's lost profits.

118.   SRC has no adequate remedy at law.  If Defendants' activities are not enjoined, SRC will continue to suffer irreparable harm and injury to its goodwill and reputation.

**FOURTH CAUSE OF ACTION**

**(For Unfair Competition, False Designation of Origin, and Passing Off Under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) Against All Defendants and DOES 1-100)**

119.   SRC incorporates by reference and realleges the allegations set forth in paragraph 1 through 118 above as if fully set forth herein.

120.   Defendants' acts of distributing, marketing, and selling their Sculpt Sweat Products with packaging that is confusingly similar to the Sweet Sweat Trade Dress, including but not limited to Defendants' use of SRC Contact Information and SWEET SWEAT® UPC and the Sculpt Sweat Representations, constitute unfair competition, false designation of origin, and passing off that are likely to cause confusion, mistake, or to deceive as to the source, affiliation, or approval of

31
COMPLAINT

Defendants and/or Defendants' goods, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

121.   SRC is informed and believes, and based thereon alleges, that Defendants' activities described above have been willful, wanton, and in deliberate disregard of SRC's trademark rights, and for the purpose of intentionally misappropriating and capitalizing on SRC's goodwill.

122.   Defendants' aforementioned acts are exceptional within the meaning of 15 U.S.C. § 117.

123.   As a direct and proximate result of Defendants' acts of unfair competition, false designation of origin, and passing off, SRC has suffered damage to the SWEET SWEAT® trademark, and other damages in an amount to be proven at trial, including Defendants' profits and SRC's lost profits.

124.   SRC has no adequate remedy at law.  If Defendants' activities are not enjoined, SRC will continue to suffer irreparable harm and injury to its goodwill and reputation.

## FIFTH CAUSE OF ACTION

### (For Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) Against All Defendants and DOES 1-100)

125.   SRC incorporates by reference and realleges the allegations set forth in paragraph 1 through 124 above as if fully set forth herein.

126.   SRC's SWEET SWEAT® trademarks and Sweat Drop Logo are famous and well-known throughout the United States, having been used extensively for many years.  By reason of extensive advertising and use, SRC's marks have become highly distinctive of SRC's goods and are uniquely associated with SRC.

127.   Defendants' commercial use of the Sculpt Sweat mark in connection with its infringing packaging has diluted and continues to dilute the distinctive quality of

SRC's famous marks by lessening their capacity to distinguish SRC exclusively as the source of goods bearing or provided under its marks.

128.   Defendants' commercial use of the Sculpt Sweat mark in connection with its infringing packaging further dilutes SRC's marks by associating them with a product of inferior quality, thereby tarnishing the marks.

129.   Defendants' unlawful use of the Sculpt Sweat mark in connection with its infringing packaging is intended to and has the effect of trading on SRC's reputation and causing dilution to SRC's famous marks.

130.   SRC is informed and believes, and based thereon alleges, that Defendants do not own any federal or state registrations or trademark application for any mark that includes, in whole or in part, the Sculpt Sweat mark and cannot assert any rights in the Sculpt Sweat mark that are prior to SRC's first use of its SWEET SWEAT® mark and Sweat Drop Logo.

131.   Defendants' foregoing conduct is in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

132.   SRC is informed and believes, and based thereon alleges, that Defendants' activities described above have been willful, wanton, and in deliberate disregard of SRC's trademark rights, and for the purpose of intentionally misappropriating and capitalizing on SRC's goodwill.

133.   Defendants' aforementioned acts are exceptional within the meaning of 15 U.S.C. § 117.

134.   As a direct and proximate result of Defendants' acts of willful trademark dilution, SRC has suffered damage to the SWEET SWEAT® trademark and Sweat Drop Logo, and other damages in an amount to be proven at trial, including Defendants' profits and SRC's lost profits.

135.   SRC has no adequate remedy at law.  If Defendants' activities are not enjoined, SRC will continue to suffer irreparable harm and injury to its goodwill and reputation.

**SIXTH CAUSE OF ACTION**

**(For Trademark Dilution Under Cal. Bus. & Prof. Code § 14247**

**Against All Defendants and DOES 1-100)**

136.   SRC incorporates by reference and realleges the allegations set forth in paragraph 1 through 135 above as if fully set forth herein.

137.   SRC has extensively and continuously promoted and used the SWEET SWEAT® mark and the Sweat Drop Logo in the United States and in California, and the SWEET SWEAT® mark and Sweat Drop Logo have thereby become distinctive and famous symbols of SRC's workout enhancer products.

138.   Defendants' commercial use of the Sculpt Sweat mark in connection with its infringing packaging has diluted and continues to dilute the distinctive quality of SRC's marks by lessening their capacity to identify and distinguish SRC exclusively as the source of goods bearing or provided under the marks.

139.   Defendants' commercial use of the Sculpt Sweat mark in connection with its infringing packaging further dilutes SRC's marks by associating them with a product of inferior quality, thereby tarnishing the marks.

140.   SRC is informed and believes, and based thereon alleges, that Defendants' activities described above have been willful, wanton, and in deliberate disregard of SRC's trademark rights, and for the purpose of intentionally misappropriating and capitalizing on SRC's goodwill.

141.   Defendants have caused significant injury to SRC's goodwill and business reputation, and dilution of the distinctiveness and value of SRC's famous and distinctive marks in violation of California Bus. & Prof. Code § 14247.

142.   As a direct and proximate result of Defendants' acts of willful trademark dilution, SRC has suffered damage to the SWEET SWEAT® trademark and Sweat Drop Logo, and other damages in an amount to be proven at trial, including Defendants' profits and SRC's lost profits.

143.   SRC has no adequate remedy at law.  If Defendants' activities are not enjoined, SRC will continue to suffer irreparable harm and injury to its goodwill and reputation.

## SEVENTH CAUSE OF ACTION

### (For Unfair Competition Under Cal. Bus. & Prof. Code §§ 17200 *et seq.* Against All Defendants and DOES 1-100)

144.   SRC incorporates by reference and realleges the allegations set forth in paragraph 1 through 143 above as if fully set forth herein.

145.   SRC holds common law trademark rights in the SWEET SWEAT® mark, the Sweat Drop Logo, and the Sweet Sweat Trade Dress.

146.   Defendants' use of the Sculpt Sweat mark and the infringing packaging in connection with the distribution, marketing, and sale of Defendants' Sculpt Sweat Product is likely to cause confusion, deception, and mistake among, consumers, the public, and the trade as to whether Defendants' products originate from, or are endorsed by, SRC.

147.   Defendants' conduct constitutes unfair competition in violation of Bus. & Prof. Code §§ 17200 *et seq.*

148.   Defendants' conduct is causing, and is likely to continue causing, injury to public and to SRC.

149.   SRC has no adequate remedy at law.  If Defendants' activities are not enjoined SRC will continue to suffer irreparable harm and injury to its goodwill and reputation.

150.   Defendants have been unjustly enriched by their infringing conduct.

## EIGHTH CAUSE OF ACTION

### (Civil Conspiracy Against All Defendants and DOES 1-100)

151.   SRC incorporates by reference and realleges the allegations set forth in paragraph 1 through 150 above as if fully set forth herein.

152.   SRC alleges that Defendants formed a plan to directly compete against SRC by utilizing SRC Contact Information and SWEET SWEAT® UPC in conjunction with its infringing Sculpt Sweat mark on its infringing packaging.

153.   Defendants all agreed to the plan and were each aware that each other planned to participate in the plan and that the plan was unlawful and fraudulent.

154.   As a result of the conspiracy, SRC has been harmed because, among other things, Defendants have derived certain direct and indirect benefits and profits from their unlawful distribution, marketing, and sale of products in the infringing packaging, all at SRC's economic and reputational expense.

155.   SRC is informed and believes, and based thereon alleges, that Defendants' activities described above have been willful, wanton, and in deliberate disregard of SRC's rights.

## NINTH CAUSE OF ACTION

### (For Accounting Against All Defendants and DOES 1-100)

156.   SRC incorporates by reference and realleges the allegations set forth in paragraph 1 through 154 above as if fully set forth herein.

157.   SRC is not aware and cannot ascertain without an accounting the full amounts Defendants profited from the use of the Sculpt Sweat mark and sales of the Sculpt Sweat Product as a direct and proximate result of Defendants' unlawful conduct.

158.   Accordingly, SRC is entitled to a formal opening of the books and accounting, including but not limited to, all profits made from the use of the Sculpt Sweat mark and sales of the Sculpt Sweat Product as a direct and proximate result of Defendants' unlawful conduct.  Such an accounting is necessary to determine monies due to SRC.

1

## **PRAYER FOR RELIEF**

2   WHEREFORE, SRC prays for judgment against Defendants as follows:

3   1.    That Defendants and their officers, members, directors, agents, servants,

4   employees, representatives, and all persons acting in concert or participation with

5   them, be permanently enjoined from:

6        a.    Marketing and selling the Sculpt Sweat Product or any other

7   workout enhancer products in infringing packaging;

8        b.    Using the Sweet Sweat Trade Dress or any confusingly similar

9   trade dress on or in connection with workout enhancer products;

10       c.    Using the Sculpt Sweat mark on or in connection with workout

11   enhancer products;

12       d.    Using any false designation of origin, or representing or suggesting

13   directly or by implication that Defendants or their products are affiliated with,

14   associated with, authorized by, or otherwise connected to SRC; that Defendants are

15   authorized by SRC to use the Sweet Sweat Trade Dress or trademarks confusingly

16   similar to the SWEET SWEAT® mark; or that Defendants' products originate with

17   SRC or are brand variants or line extensions of SRC's workout enhancer products;

18       e.    Using any simulation, reproduction, copy, or colorable imitation of

19   the Sweet Sweat Trade Dress in connection with the promotion, advertisement,

20   display, sale, offering for sale, manufacture, production, circulation, or distribution of

21   any product or service in such a manner as to relate or connect, or tend to relate or

22   connect, such product in any way to SRC or any products or services sold,

23   manufactured, sponsored, or approved by or connected with SRC;

24       f.    Engaging in any other activity constituting unfair competition with

25   SRC, or constituting infringement of the SWEET SWEAT® trademark or the Sweet

26   Sweat Trade Dress; and

27       g.    Instructing, assisting, aiding, or abetting any other person or

28   business entity in engaging in or performing any of the activities referred to in

37

subparagraphs (a) through (f) above.

2.     That Defendants be required to recall from the trade and all distribution channels any and all products, packaging, advertising, and promotional materials bearing or incorporating the Sweet Sweat Trade Dress, the Sculpt Sweat trademark, or any other mark, design, or configuration that is confusingly similar to the SWEET SWEAT® trademark or the Sweet Sweat Trade Dress, including but not limited to any and all workout enhancer products packaged in infringing packaging, and any advertising and promotional materials depicting the infringing packaging.

3.     That Defendants be required to deliver to the Court for destruction, or show proof of destruction of, any and all products, packaging, advertising, and promotional materials in Defendants' possession or control that use the Sweet Sweat Trade Dress, the Sculpt Sweat trademark, or any other mark, design, or configuration that is confusingly similar to the SWEET SWEAT® trademark, the Sweet Sweat Trade Dress, including but not limited to the infringing packaging, and any advertising and promotional materials depicting the infringing packaging.

4.     That Defendants be required to undertake corrective advertising to remedy the damage and injury to SRC caused by Defendants' unlawful infringing of SRC's trademarks and trade dress.

5.     That Defendants be directed to file with the Court and serve on SRC, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

6.     That Defendants account for and pay over to SRC all profits realized by Defendants as a direct and proximate result of Defendants' unlawful conduct.

7.      That SRC recover its actual damages.

8.      That the Court award enhanced profits and treble damages.

9.      That SRC be awarded statutory damages.

10.     That SRC be awarded punitive damages to deter any future violations of SRC's rights.

11.     That SRC be awarded interest, including pre-judgment and post-judgment interest, on the foregoing sums.

12.     That the Court deem this to be an exceptional case, and that the Court order Defendants to pay SRC the costs of this action and SRC's reasonable attorneys' fees and expenses under 15 U.S.C. §§ 1116 and 1117.

13.     That the Court direct such other actions as the Court may deem just and proper to prevent the public from deriving the mistaken impression that any products or services offered, advertised, or promoted by or on behalf of Defendants are authorized by SRC or related in any way to SRC's products or services.

14.     That SRC has such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

SRC requests a jury trial.

1  DATED:  March 5, 2020

2                                      GARCIA RAINEY BLANK & BOWERBANK LLP

3

4                                      By      /s/ Jeffrey M. Blank

5                                                      JEFFREY M. BLANK
                                                       NORMA V. GARCIA
6                                                      Attorneys for Plaintiff
                                              SPORTS RESEARCH CORPORATION
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT